IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANICE R. BENNETT,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social Security,<br><br>    Defendant. | CASE NO. 4:16-cv-00719-GBC<br><br>(MAGISTRATE JUDGE COHN)<br><br>OPINION AND ORDER TO DENY PLAINTIFF'S APPEAL |

**OPINION AND ORDER TO DENY PLAINTIFF'S APPEAL**

This matter is before the undersigned United States Magistrate Judge for decision. Janice R. Bennett ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the Court **DENIES** Plaintiff's appeal and **AFFIRMS** the Commissioner's decision in this case.

**I. STANDARD OF REVIEW**

To receive disability or supplemental security benefits under the Social Security Act ("Act"), a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A).

The Act further provides that an individual:

---

[1] Effective January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Commissioner Berryhill is automatically substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's ("ALJ's")] findings in order to determine if the substantiality test has been met." Id. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## II. BACKGROUND

**A.**     **Procedural History**

Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income ("SSI") payments under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3), in October 2008. (See Tr. 46-49). She alleged disability beginning December 2, 2007, due to arthritis and deteriorating bones in the spine. (Tr. 132). After early denials, Plaintiff testified at an administrative hearing and, in August 2010, an ALJ issued a decision finding Plaintiff not disabled. (Tr. 17-24, 27-45, 51-58, 62-67). The Appeals Council declined review. (Tr. 1-4). Plaintiff then appealed to this Court, which remanded the case to the agency for further proceedings. (Tr. 536-52).

The ALJ held a new administrative hearing, during which Plaintiff was represented by counsel. (Tr. 513-35). Plaintiff amended her alleged onset of disability to June 10, 2009. (Tr. 495, 515-16). At the time of the hearing, Plaintiff was fifty-nine years old. (Tr. 30). In August 2014, the ALJ issued a partially favorable decision finding Plaintiff disabled as of August 28, 2013, but

3

not disabled at any earlier time. (Tr. 495-506). On October 6, 2016, the Appeals Council declined review of the new decision, making the August 2014 ALJ decision the final decision of the Commissioner. (Tr. 481-86). Plaintiff then appealed to this Court. The overarching question from the second ALJ decision is whether Plaintiff was not disabled prior to August 28, 2013.

## III. ISSUES AND ANALYSIS

On appeal, Plaintiff alleges four errors: (1) the ALJ erred by failing to properly apply the treating physician rule; (2) the ALJ erred by failing to find Plaintiff limited to at least light work and should "grid out" according to the medical vocational guidelines; (3) the ALJ erred at Step [Five][2] of the sequential evaluation process by finding Plaintiff could perform work, which directly violates her residual functional capacity ("RFC") limitations; and (4) the ALJ erred at Step Five of the sequential evaluation process by finding Plaintiff could perform the job duties of cook helper, dining room attendant, and machine packager. (Pl. Br. at 2, Doc. 13).

**A.     ALJ's Evaluation of the Medical Evidence**

**1.     Opinions in the Record**

Plaintiff contends the ALJ failed to properly apply the treating physician rule and gave the Disability Determination physicians great weight even though they did not examine Plaintiff. (Pl. Br. at 2-3). In the decision, the ALJ reviewed the record when evaluating the medical evidence:

> Since the amended alleged onset date of disability, June 10, 2009, the claimant has had the following severe impairments: degenerative disc disease of the thoracic spine and chronic obstructive pulmonary disease. Beginning on the established onset date of disability, August 28, 2013, the claimant has had the [above] severe impairments [and]: a transient ischemic attack …
>
> The claimant's testimony is summarized as follows: The claimant stated that she has never had a sit-down job. She stated that she is unable to work full-time because of shortness of breath, chronic obstructive pulmonary disease and she

---

[2] Plaintiff states Step Four in the brief, but the ALJ found Plaintiff could not perform her past work at Step Four. (Tr. 504). Thus, the Court addressed Plaintiff's argument as referencing Step Five, as did Defendant in her response.

is only able to sit or stand for short periods of time. The claimant stated that she is only able to sit for twenty to thirty minutes, one hour at most if she is able to shift positions. The claimant rated her pain at eight out of ten and she is not on pain medication due to a hernia. The claimant stated that she could stand for thirty minutes due to back and leg pain. The claimant reported neck problems. She stated that the doctors told her she had deteriorating bones and arthritis. The claimant alleged that she is only able to walk one-quarter block, due to shortness of breath and chronic obstructive pulmonary disease. She stated that she has to sit for thirty minutes before resuming. She stated that she has to lie down during the day because of her back. She stated that she cannot bend or squat without pain. She stated that she is able to lift five pounds. The claimant alleged that her hands locked up on her, but she is able to do buttons and [z]ippers, and twist a bottle cap. The claimant stated that she slept for four hours per night, waking every hour. She stated that she drives once per week. She has a valid driver's license. The claimant stated that she does not do household chores. The claimant stated that she does her own grocery shopping, but she has to have someone with her. She stated that there are days when she stays in bed. The claimant stated that she has no hobbies, as she is no longer able to fish or garden. The claimant stated that she has no social activities. She was seeing her doctor every month, but she is no longer able to afford it. The claimant stated that she has had two strokes, but is unsure of lingering effects …

On March 7, 2009, the claimant underwent an x-ray examination of the lumbosacral spine. Bill Buffington, M.D., interpreted the x-ray findings. The x-rays showed good alignment of the spine in both the AP and lateral views. Intervertebral disc spaces were well-maintained and there were very minimal osteophytes off the anterior L5 vertebrae. No intra-abdominal changes, foreign bodies or masses were found. These objective findings do not support any limitations greater than those identified in the residual functional capacity above.

On March 19, 2009, the claimant presented to Mohammad Quadeer, M.D., for an internal medicine consultative examination with complaints of back pain due to arthritis. The claimant stated that she stopped working due to increased back pain. She was reported that she was diagnosed with degenerative disc disease of the back. She complained of pain in the upper back and lower back. She also reported pain associated with muscle spasms. The claimant denied asthma, shortness of breath, chronic obstructive pulmonary disease, chronic cough, hemoptysis or pneumonia. On examination, the claimant was cooperative, properly nourished and not in any acute distress. Examination of the head, eyes, ears, nose, throat and skin revealed no abnormality. The neck was supple. The chest was symmetrical with equal expansion bilaterally. Lung fields were clear to auscultation. No rales, rhonchi or wheezes were noted. Examination of the heart and abdomen showed no abnormality. No cyanosis or digital clubbing was noted. No edema or varicosities were noted. There was no point tenderness on examination. Peripheral pulses were adequate in all four extremities. Grip strength was five out of five bilaterally strong and firm. She was able to do both gross and fine manipulation with the hands. Fingertip to thumb opposition was adequate. Knees were stable in all range of motion exercises. Great toe strength was equal bilaterally. The cervical spine was

not tender and exhibited full range of motion. The thoracic and lumbar spines were not tender and showed full range of motion. The lumbosacral spine was tender, but showed full range of motion with slight muscle spasms. There was no indication of scoliosis, increased kyphosis or lordosis. Straight leg raise was negative in the supine and seated positions. Cranial nerves two through twelve were grossly intact. Deep tendon reflexes were normal in all extremities bilaterally. There was no indication of sensory or motor deficit noted. Finger-to-nose and heel-to-shin tests were normal. No prenatal drift was noted. Romberg's and Babinski's were negative. The claimant's gait was safe and stable, with appropriate speed. She did not ambulate with the aid of assistive devices. She had no identifiable muscle atrophy. Heel and toe walking were normal. Tandem gait was normal. The claimant was assessed with pain in the upper and lower back with only tenderness present from T9 to T11, and associated with muscle spasm in the lower thoracic and upper lumbar region. Dr. Quadeer also offered the diagnosis of arthritis in the back diagnosed by a physician. While tenderness was noted on examination, there was no indication of functional limitation resulting from the pain. The spine had full range of motion throughout, there was no deficiency in range of motion in the extremities and the claimant was able to use the hands for fine and gross manipulation. It should also be noted that there was no indication of respiratory difficulty. These findings do not offer any support for greater limitations than identified … in the RFC finding.

On May 18, 2009, the claimant presented to David Tucker, M.D., for follow-up of back pain. She reported a great deal of chronic back pain, discomfort, difficulty bending, lifting and twisting. The claimant reported that she was unable to perform the physical labor she had done previously. There were no respiratory complaints. On examination, the head, eyes, ears, nose, throat and neck were normal. The lungs were clear. The abdomen showed no abnormality. The extremities were normal. There was some mild superior tenderness. There was some back tenderness, although not cerebrovascular in nature. On June 1, 2009, Dr. Tucker wrote a letter concerning the claimant. He stated that the claimant had been seen intermittently in the past for thoracic strain and some degenerative disease of the thoracic spine. Dr. Tucker was unaware of any diagnostic tests or therapy she had undergone. She had been advised to avoid repetitive lifting and bending, but from reviewing the records, Dr. Tucker could find no other restrictions. The findings on examination do not support the claimant's complaints. Diffuse and mild tenderness do not rise to the level of subjective complaints from the claimant. Furthermore, as will be discussed in greater detail below, the findings on this examination do not support the limitations offered by Dr. Tucker in the medical source statement.

On July 28, 2009, Dr. Tucker … noted decreased range of motion in the lumbar spine, only with pain on extension and flexion. The cervical spine showed decreased range of motion, only with pain on flexion and extension. There was no pain in the lumbar spine on lateral bending and in the cervical spine on rotation. Heel and toe walking were normal. Straight leg raising was negative bilaterally in both the seated and supine positions. Strength was normal. There was diffuse

> tenderness and muscle spasm, but no degree was given. There was no indication in sensory loss.
>
> On August 26, 2009, the claimant presented to Dr. Tucker with complaints of shortness of breath. Dr. Tucker noted a recent x-ray that showed some elements of chronic obstructive pulmonary disease. She reported shortness of breath, weakness and fatigue. On examinations, the lungs showed distant breath sounds. The extremities were normal. Pulmonary function studies were performed, which showed forced vital capacity to be sixty-three-percent of the predicted value, with an FEV1 value that is one-hundred-percent of the predicted value. The midflow was fifty-one-percent, which increased to eighty after bronchodilator. She was given medications and instructed to return in one month. The claimant returned on November 2, 2009 for follow-up. It was noted that the claimant was treated for pneumonia with elevated white count. On examination, the lungs were clear. There was no heart murmur. She was given a refill of Darvocet for degenerative joint disease, but there was no indication of musculoskeletal examination. The respiratory evidence seems to indicate that the claimant's respiratory symptoms were controlled by medication. Despite there being no complaints of pain, the claimant was prescribed Darvocet. There was no indication of examination to show back pain. Between October 21, 2009 and October 22, 2009, the claimant received treatment at Ozarks Community Hospital. The claimant was admitted for abdominal pain relating to a hiatal hernia. The claimant underwent three blood infusions for treatment.

(Tr. 497, 500-02). Thus, the ALJ put forth a detailed review regarding Plaintiff's impairments of degenerative disc disease of the thoracic spine and chronic obstructive pulmonary disease (COPD). From the record, the ALJ found Plaintiff had the RFC to perform:

> medium work … to occasionally lift and / or carry 50 pounds, frequently lift and / or carry 25 pounds, stand and / or walk at least 6 hours in an 8-hour workday, and sit at least 6 hours in an 8-hour workday. The claimant was able to occasionally stoop and frequently climb such things as ramps or stairs. The claimant was able to frequently balance, kneel, crouch, and crawl. The claimant needed to avoid concentrated exposure to such things as dust or fumes.

(Tr. 498-99). The ALJ formulated the RFC from consideration of all of the evidence.

### a. Dr. Tucker and the Disability Determination Division Physicians

Plaintiff contends the ALJ failed to properly apply the treating physician rule. (Pl. Br. at 2). The ALJ reviewed the opinion by Dr. Tucker in the decision but found it was not entitled to controlling weight:

> Dr. Tucker completed a medical source statement on June 11, 2009, giving the claimant an extremely limited RFC. It should not be given controlling weight because it is contradicted by what he said ten days before … and greatly exceeds any physical limitations that would reasonably result from degenerative disc disease of the thoracic spine (which has not been diagnosed by imaging, but merely clinically). Nor would her treated hypertension reasonably lead to such limitations. In addition, on January 3, 2008, [her] back is noted to be much less tender. Furthermore, [at] the examination from Dr. Quadeer, while tenderness and spasm were noted, the findings do not support the degree of limitation opined by Dr. Tucker.
>
> The ALJ does not discount all of the claimant's complaints … however, the evidence within the record demonstrates that even though the claimant did have a medically determinable impairment; it was not severe enough to prevent the claimant from participating in substantial gainful activity, given the RFC set forth above. Given the objective medical evidence in the record, the ALJ finds that the claimant's RFC was reasonable, and that the claimant could function within those limitations without experiencing significant exacerbation of her symptoms.

(Tr. 503-04). Thus, the ALJ weighed the medical opinions and Plaintiff's symptoms and complaints prior to finding the RFC. Plaintiff also asserts the ALJ improperly relied on the opinion of the disability determination division physicians even though they did not examine Plaintiff. (Pl. Br. 2-3). The ALJ made the finding as follows:

> The opinions of the Oklahoma Disability Determination Division physicians are given great weight because they are in line with the medical evidence of record, which shows only degenerative disc disease of the thoracic spine, hypertension and chronic obstructive pulmonary disease.

(Tr. 503). An ALJ may give greater weight to the opinion of a State agency medical consultant over other opinions when the consultant's opinion is better-supported by the record than the opinion of the treating physician. See 20 C.F.R. § 404.1527(e)(2)(ii) (ALJ should evaluate a state agency medical consultant's opinion using the factors set forth in 20 C.F.R. § 404.1527(a)-(d)), 404.1527(c)(4) (ALJ must consider whether an opinion is consistent with the record as a whole). In his March 2009 opinion, Dr. Quadeer found: "[t]he thoracic and lumbar spines were not tender and showed full range of motion. The lumbosacral spine was tender, but showed full range of motion with slight muscle spasms. There was no indication of scoliosis, increased kyphosis or

8

lordosis. Straight leg raise was negative in the supine and seated positions." (Tr. 501). The ALJ could reasonably rely on Dr. Quadeer's opinion.

Moreover, the ALJ declined to assign Dr. Tucker's opinion controlling weight because it was contradicted by what the doctor said ten days prior and unsupported with the medical record. (Tr. 503). In June 2009, Dr. Tucker wrote that he had seen Plaintiff "intermittently" for thoracic strain and some degenerative disease of the thoracic spine. (Tr. 429). He stated that Plaintiff was advised to avoid repetitive lifting and bending, but he saw no other restrictions in her records. (Tr. 429). Dr. Tucker concluded further testing would be needed to rate the limitations caused by Plaintiff's back issues. (Tr. 429). Nine days later, Dr. Tucker opined Plaintiff could sit for four hours, stand for three hours, and walk for two hours during an eight-hour workday; could lift and carry between five and 20 pounds; could not perform several postural maneuvers; and had environmental limitations. (Tr. 430-32). Dr. Tucker stated his findings were based on evaluations and physical exams, but added Plaintiff "need[ed] further testing to tell [the] extent of [her] limitations." (Tr. 432). In July 2009, Dr. Tucker completed an assessment indicating Plaintiff had some limited range of motion and pain in her lumbosacral and cervical spine, but also a normal ability to walk and negative straight leg raise tests. (Tr. 444). In August and November 2009, Plaintiff saw Dr. Tucker for respiratory issues; her neck and extremities were normal at that time. (Tr. 463, 468). The record does not show Plaintiff received any further treatment for her back pain.

The ALJ reasonably found Dr. Tucker's opinion was not entitled to controlling or great weight. The ALJ explained while Dr. Tucker opined Plaintiff was "extremely limited," he stated ten days before he was "unaware of any diagnostic tests or therapy" Plaintiff had undergone and he could identify no limitations beyond avoiding repetitive lifting and bending. (Tr. 503, citing Tr. 392, 430-32; see also Tr. 503, citing Tr. 429). See 20 C.F.R. § 404.1527(c)(3) (opinions receive

9

weight based on their supportability); see also Branum v. Barnhart, 385 F.3d 1268, 1275-76 (10th Cir. 2004) (ALJ may consider the degree to which the physician's opinion is supported by relevant evidence). The ALJ also explained Dr. Tucker's own examination findings did not support his opinion as he observed only mild and diffuse tenderness in the back. (Tr. 502, citing Tr. 426-27). The ALJ reasonably found "[d]iffuse and mild tenderness" did not rise to the level of Plaintiff's subjective complaints about her symptoms and "d[id] not support the limitations offered by Dr. Tucker in [his] medical source statement." (Tr. 502, citing Tr. 430-32). Further, the ALJ noted Dr. Tucker observed in 2008, Plaintiff's back was "much less tender than it had been previously." (Tr. 503, citing Tr. 394). These were valid reasons for discounting Dr. Tucker's opinion. See Vigil v. Colvin, 805 F.3d 1199, 1202 (10th Cir. 2015) ("The ALJ's finding [the physician's] restrictions on standing and walking were inconsistent with his own examination findings is a good reason for giving that medical opinion only moderate weight.").

The ALJ discussed additional evidence "d[id] not support the degree of limitation opined by Dr. Tucker." (Tr. 503). The ALJ noted while consultative examiner Dr. Quadeer observed some tenderness and spasm in Plaintiff's back, the rest of his findings did not support Dr. Tucker's opinion. (Tr. 503, citing Tr. 365-71). As the ALJ explained earlier in his decision, Dr. Quadeer's examination findings showed "full range of motion throughout" Plaintiff's spine, negative straight leg raise testing, ambulating without an assistive device, and no apparent muscle atrophy. (Tr. 501, citing Tr. 367-68, 371). The ALJ reasonably found Dr. Quadeer's largely normal examination findings did not support Dr. Tucker's restrictive opinion. See 20 C.F.R. § 404.1527(c)(4) (opinions receive weight based on consistency with the record as a whole); Raymond v. Astrue, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician opinion which was inconsistent with other medical evidence).

Therefore, the ALJ reasonably declined to give weight to this opinion, which the ALJ found inconsistent with the overall record. (See 20 C.F.R. § 404.1527(c)(4) (stating an ALJ must consider whether an opinion is consistent with the record as a whole); see also Raymond v. Astrue, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician opinion which was inconsistent with other medical evidence). Moreover, the ALJ could reasonably rely on the opinion of the state agency physicians. See 20 C.F.R. § 416.927(e)(2)(i) (state agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2008) (a non-examining physician is an acceptable medical source, whose opinion the ALJ is entitled to consider).

**B.     ALJ's RFC Findings**

Plaintiff states the ALJ erred by failing to limit her to at least light work, as she would "grid out" according to the medical vocation guidelines. (Pl. Br. at 6). In the decision, the ALJ thoroughly reviewed the record and medical opinions, identified Plaintiff's severe impairments of degenerative disc disease of the thoracic spine and chronic obstructive pulmonary disease, and limited Plaintiff to medium work in the RFC. (Tr. 497-504). Plaintiff contends if the ALJ had followed the limitations identified by Dr. Tucker, she would be limited to sedentary work only. (Pl. Br. at 6).

**1.     RFC for Medium Work and Plaintiff's Severe Impairments**

Although Plaintiff states the ALJ erred by failing to limit her to at least light work, courts have upheld decisions finding an RFC for medium work for plaintiffs with similar impairments. In 2016, the Northern District of Oklahoma found:

> This case is not one in which the ALJ found a severe impairment at step two to be "insignificant" at step five. Timmons v. Barnhart, 118 F. App'x 349, 353 (10th

> Cir. 2004) (unpublished).[3] Rather, the ALJ weighed the medical evidence and accepted the opinion of Dr. Jennings, who conducted a physical examination of plaintiff, obtained x-rays, and performed a pulmonary function test. The x-rays revealed mild degenerative changes in the lumbar spine, evidence of a cervical fusion, "postoperative changes with degenerative spurring of the vertebral body endplates at C3–C4 with slight anterolisthesis, facet joint degeneration and narrowing most striking at C3–C4 and C6–C7." During the examination, plaintiff exhibited a normal range of motion without pain, "resting pulse oximetry [of] 96%," and "[a]ppropriate mood and affect." Plaintiff's pulmonary test results showed "Forced Vital Capacity of 3.9, 4.3, and 4.3 with FEI of 2.1, 2.4, and 2.3 after bronchodilator."
>
> Based on his examination, Dr. Jennings completed a RFC form, in which he found that plaintiff could perform the full range medium work with no environmental restrictions. The ALJ gave great weight to this opinion and adopted it as his RFC.
>
> The ALJ further explained that this evidence was consistent with the other evidence of physical examinations in the record, which were "mainly within normal limits." … This conclusion was based on a discussion of all plaintiff's medical records, including previous x-rays and pain management records. The ALJ specifically noted that plaintiff had normal range of motion in the cervical spine without pain in November 2011, January 2012, May 2012, June 2012, August 2012, and September 2013. Treatment notes also showed no issues with ambulation throughout and specifically noted normal range of motion of the lumbar spine in August 2012 and September 2013.
>
> Accordingly, the Court finds that the ALJ's RFC findings are supported by substantial evidence and adequately account for plaintiff's severe impairments of degenerative disc disease post status cervical fusion and COPD/asthma.

Hess v. Colvin, No. 15-CV-374-TLW, 2016 WL 5408164, at *2 (N.D. Okla. Sept. 28, 2016). Similarly, in this case, the ALJ considered the medical evidence surrounding Plaintiff's impairments and adopted the findings of the disability determination / state agency physicians. In April 2009, state agency physician Janet Rodgers, M.D., opined Plaintiff was capable of performing a range of medium exertional work (Tr. 372-79). See 20 C.F.R. § 404.1567(c) (defining medium work). State agency physician Thurma Fiegel, M.D., opined to similar

---

[3] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

limitations a few months later. (Tr. 434-40). Dr. Tucker was the only source to opine Plaintiff could not perform medium work, and the ALJ reasonably discounted this opinion in light of Dr. Tucker's own examination findings and statements, as well as the mostly normal findings of consultative examiner Dr. Quadeer. Moreover, the ALJ did account for the severe physical impairments, as the ALJ limited Plaintiff to medium work. See SSR 96-8p, 1996 WL 374184, at *3 ("RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy."). In the RFC finding, the ALJ explained the limitation to medium work accounted for Plaintiff's medically-supportable symptoms and the opinions of record, and the ALJ explained how he came to that conclusion. (Tr. 503-04). See SSR 96-8p, 1996 WL 374184, at *7 (addressing the requirements for articulating RFC finding). The ALJ's decision fulfilled the requirements of the regulations.

**C.     Step Five and Plaintiff's RFC**

   **1.     Performance of Other Work**

Plaintiff contends the ALJ erred at Step Five by finding Plaintiff could perform the job duties of cook helper, dining room attendant, and machine packager. (Pl. Br. at 8). Plaintiff also contends the job of janitor, identified by the vocational expert ("VE") at the hearing, would violate the RFC's requirement to avoid concentrated exposure to dust or fumes. (Pl. Br. at 7) (citing Tr. 499, 533-34).

First, the ALJ did not include the janitor job in his decision. (See Tr. 504-05). A few weeks after the hearing, the ALJ sent interrogatories to another VE. (Tr. 678-81). See Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *9 n.8 (vocational experts "provide impartial expert opinion[s] during the hearings and appeals process either by testifying or by providing written

13

responses to interrogatories. A [vocational expert] may be used before, during, or after a hearing."). The expert stated that someone with Plaintiff's vocational background and RFC could perform the representative occupations of Cook Helper (Dictionary of Occupational Titles (DOT) No. 317.687-010, 1991 WL 672752), Dining Room Attendant (DOT No. 311.677-018, 1991 WL 672696), and Machine Packager (DOT No. 920.685-078, 1991 WL 687942) (Tr. 679-80). The ALJ's interrogatories included the RFC limitation for avoiding concentrated exposure to dust and fumes, and the VE responded a hypothetical person with this limitation could perform the three jobs identified. (See Tr. 679-70). Indeed, the DOT entries for these jobs do not indicate concentrated exposure to dust or fumes. (See DOT No. 317.687-010, 1991 WL 672752; DOT No. 311.677-018, 1991 WL 672696; DOT No. 920.685-078, 1991 WL 687942). See Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993) (when the findings regarding a claimant's impairment are adequately reflected in the ALJ's hypothetical questions to the vocational expert, the vocational expert's testimony constitutes substantial evidence to support the ALJ's related determination). Further, agency policy states that "[w]here a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc." SSR 85-15, 1985 WL 56857, at *8. The ALJ included the three jobs in his step five findings, but did not include the janitor job. (Tr. 505). Plaintiff fails to satisfy her burden of showing harmful error. See Flaherty, 515 F.3d at 1071 ("[T]he claimant bears the burden to prove her disability."

Thus, any arguable deficiency would be harmless, and would not have changed the outcome. See Raymond, 621 F.3d at 1274 (even assuming two of three jobs relied on by the ALJ were erroneous, the court affirmed the ALJ's decision where substantial evidence showed the claimant could do the third job, and the job existed in significant numbers in the national economy).

See also Vititoe v. Colvin, 549 F. App'x 723, 729-30 (10th Cir. 2013) (citing Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

"Our review of the record indicates that the ALJ's question adequately included the limitations that she found were supported by the medical record. That record, along with the VE's testimony on existing jobs, provided substantial evidence to support the ALJ's step-five determination." Talamantes v. Astrue, 370 F. App'x 955, 959 (10th Cir. 2010). Therefore, the record provided substantial evidence to support the ALJ's decision. It is not the reviewing court's position to reweigh the evidence or substitute judgment. As the Tenth Circuit has explained:

> "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." Branum v. Barnhart, 385 F.3d 1268, 1270 (10th Cir. 2004). Rather, we examine the record as a whole to ascertain whether the ALJ's decision to grant benefits for a closed period, and to deny benefits thereafter, is supported by substantial evidence and adheres to the correct legal standards. See Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It is "more than a scintilla, but less than a preponderance." Id.

Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013). Accordingly, the decision provides substantial evidence a reasonable mind might accept as adequate to support the ALJ's conclusion Plaintiff could perform a significant number of jobs in the national economy.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's appeal and **AFFIRMS** the Commissioner's decision in this case.

SO ORDERED on February 16, 2018.

**Gerald B. Cohn**
**United States Magistrate Judge**